IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,  Case No. 3:05CR707

        Plaintiff

   v.  ORDER

James N. Altiere, III,

        Defendant

This is a criminal case in which the defendant has filed a motion to suppress evidence seized during a search of his office. For the reasons that follow, the motion shall be granted in part and denied in part.

**Background**

The defendant, James N. Altiere, III, served as in-house counsel to Medback, Inc., its corporate predecessor, Affordable Chiropractic, Inc., and affiliated companies, including Professional Corporations Management Company [PCMC] and Great Lakes Medical Clinics [GLMC].

The gravamen of the government's indictment against the defendant and others, including the owners of Medback and its affiliated companies, is that the defendants engaged in a fraudulent scheme to obtain inflated reimbursements for chiropractic services. According to the indictment, the participants submitted reimbursement requests to health care insurers using codes that falsely indicated that doctors, rather than chiropractors, had treated the patients.

On October 17, 2000, the undersigned issued a warrant authorizing a search of the offices of PCMC and GLMC, including the office used by the defendant. Prior to issuing the warrant, I

extensively interlineated the warrant to ensure that it provided sufficient judicially-derived guidance to the officers who would conduct the search.

An Assistant U.S. Attorney (AUSA) not otherwise involved in the investigation supervised the search and seizure of documents. That attorney briefed the agents in advance of the search and provided them with copies of the warrant. A taint team participated in the execution of the warrant to oversee its execution within the defendant's office and to take possession of materials seized from that area. Those materials filled about twelve boxes.

The affidavit for the search warrant showed probable cause to believe that the defendant and others had committed fraud, and that documents from January 1, 1997, would be evidence of their fraudulent activities.

In addition to authorizing seizure of documents created after January 1, 1997, Attachment F to the warrant permitted initial seizure of documents predating that date. Prior to seizure of pre-January 1, 1997, documents, agents had to determine that either: 1) such documents were in a file marked on the outside with the name of one of nineteen Medback entities or a member of management; 2) if, though the outside of the file was not so marked, a cursory review of its contents showed that they pertained to such entity or individual; or 3) a file cabinet or "place of storage" was marked as containing documents pertaining to such entity or individual.

The warrant specifically excluded documents pertaining to American Radiological Services and National Digitizing Services from its scope.

Where, on later review, the taint team determined that they were otherwise outside the scope of the warrant, they were to be returned.

The AUSA was present during the search and responded to questions by the agents as they were conducting the search. On occasion, agents did not seize documents they had presented to the AUSA for inspection. Although the record does not show the frequency of such returns or percentage of documents seized as part of the total in the defendant's office, it is clear that not everything was seized.

The defendant does not challenge the issuance of the warrant or the *prima facie* validity of its directives relating to how the search of the defendant's office was to be conducted. Nor does he contend that the procedures set forth in the warrant were not followed.

Instead, the defendant argues that seizure of about two bankers boxes of documents predating January 1, 1997, was unlawful. Some of those documents include materials relating solely to either American Radiological Services or National Digitizing Services, which were excluded expressly from the warrant.

In addition to seeking suppression of those documents, defendant contends that the search and seizure went so far outside the boundaries of the warrant and underlying showing of probable cause that suppression of all seized materials is required.

For the reasons that follow, the defendant's motion to suppress shall be granted in part and denied in part.

## Discussion

Defendant claims, in effect, that seizure *ab initio* of any document pre-dating January 1, 1997, was improper. He appears likewise to argue that, where two of twelve seized boxes of documents included only pre-January 1, 1997, documents, the search became general, rather than limited, and complete suppression is required.

A suppression hearing was held to determine whether the procedures mandated by the warrant were followed. The government submitted an affidavit from the taint team AUSA in charge of the search. In addition, one of the agents participating in the search testified.

Despite the efforts of this court and the supervising AUSA, certain documents were seized that should not have been seized: namely, those relating to American Radiological Services and National Digitizing Services. The government has not explained why those documents were not inspected and otherwise left undisturbed.

Despite this lapse, which is relatively minor, the taint team AUSA and agents sought to, and otherwise did comply with the commands of the warrant with regard to the seizure of documents pre-dating January 1, 1997. Nonetheless, my subsequent review of those documents concluded that all but a very small number were outside the scope of the warrant.[1]

As to those documents, the defendant's motion to suppress shall be granted. The government's "nexus" theory,[2] coupled with permissive instructions in Attachment F,[3] may have justified initial seizure of the documents for subsequent taint team review. Such theory, once no

---

[1] *See* Memorandum dated February 9, 2006, filed herewith.

[2] The government contends that documents pre-dating January 1, 1997, could have a nexus with activities and documents created after that date. A 1995 billing manual or memorandum, for example, could control or explain a post-January 1, 1997, procedure or practice. But no such documents were included in those seized. Nor is some other nexus between the pre-January 1, 1997, documents and the period of the charged illegalities apparent.

[3] The restrictions in Attachment F to the warrant required that some indicia be discernable of a connection between the defendants' unlawful activities and the outside or contents of a file or other storage area in which the documents were found. The defendant has not presented any evidence indicating that these restrictions were not obeyed.

nexus was found, was not, however, a substitute a prior for probable cause showing that pre-January 1, 1997, documents were evidence of the crimes charged to the defendant and others. Thus, while it may have been lawful for the government to seize the documents in the first instance, they are not admissible because they were not, in fact, evidence of criminal activity after January 1, 1997.

This does not mean that seizure of these documents justifies suppression of the other ten boxes of documents. The extreme remedy of suppression of documents that were otherwise lawfully seized and within the probable cause showing of the affidavit is justified only if the overall search manifested "flagrant action" in derogation of the Fourth Amendment. *U.S. v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985).

Such flagrant action has not been found, even where officers seized, *inter alia*, "boxes of receipts, records, and photographs, without examining their contents to determine which items, if any, were to be seized under the warrant." *U.S. v. Wolfe*, 234 F.3d 1271, 2000 WL 1562833, *7 (6th Cir.) (Unpublished decision); *see also U.S. v. Maddox*, 106 F.3d 402, 1997 WL 14772, *2 (6th Cir.) (Unpublished decision) (where drug warrant authorized seizure of photos and financial records, warrant's scope not flagrantly disregarded by seizure of "personal photographs, papers regarding the estate of [defendant's] mother-in-law, funeral home receipts, high school course catalogs, birth certificates, health records of [his] son, and a college transcript").

Seizure of the excess documents in this case was far from flagrant. Here, as in *U.S. v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988), an "extensive seizure of records was authorized by the terms of the warrant, [and] it was inevitable that the officers would seize documents that were not relevant to the proceedings at hand."). In any event, as already noted, the seizure occurred in compliance with this court's directive regarding pre-January 1, 1997, documents.

Attachment F, which contained that directive was, moreover, extensively modified by me before I signed the warrant. It was readily apparent from the interlineated appearance of the warrant that care had been taken to ensure proper judicial control over the agents' discretion. The taint team AUSA was on site, and reviewed seizures as they were made, and the officers were otherwise justified in their reasonable belief that they were following this court's extensive instructions as to how they should conduct the search.

Sufficient effort was made, and successfully so, to avoid converting this broad-ranging search into an unregulated, unsupervised, and unrestricted general search. Complete suppression of all seized documents is not justified.

## Conclusion

It is, therefore,

ORDERED THAT defendant's motion to suppress granted in part and denied in part; documents pre-dating January 1, 1997, suppressed; documents post-dating said date are admissible.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge